# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAUREN HAIDON,<br><br>   Plaintiff,<br><br>v.<br><br>THE TOWN OF BLOOMFIELD,<br><br>PAUL HAMMICK, individually and in his capacity as Chief of the Bloomfield Police Department,<br><br>BRENDAN DANAHER, individually and in his capacity as a Bloomfield Police Officer,<br><br>ZACHARY KLOMBERG, individually and in his capacity as a Bloomfield Police Sargent,<br><br>MATTHEW SUPLEE, individually and in his capacity as a Bloomfield Police Lieutenant,<br><br>and OTHER KNOWN OR UNKNOWN OFFICERS OF THE BLOOMFIELD POLICE DEPARTMENT,<br><br>   Defendants. | **COMPLAINT**<br><br>**AND JURY DEMAND**<br><br><br>Civil Action No. 3:19-cv-00119 |

Plaintiff, Lauren Haidon ("Ms. Haidon"), by her attorneys, Dilworth IP, LLC, and Rupp Baase Pfalzgraf Cunningham LLC, as and for her verified complaint against defendants, Town of Bloomfield, Captain Paul Hammick, K-9 Police Officer Brendan Danaher, Police Sargent Zachary Klomberg, Lieutenant Matthew Suplee, and other known or unknown officers of the Bloomfield Police Department alleges as follows:

## INTRODUCTION AND PARTIES

1.     Ms. Haidon is a single mother to her daughter Sophia.  Ms. Haidon currently is living and resides in West Seneca, New York.

2.     Upon information and belief, at all times hereinafter mentioned, defendant, Town of Bloomfield, was and is a municipal corporation duly organized and existing under the laws of the State of Connecticut and has a business address at the Office of the Town Clerk, 800 Bloomfield Avenue, Bloomfield, Connecticut 06002.

3.      Defendant, Town of Bloomfield, through its Town Council, Public Safety Committee and their officers, agents, servants, employees, and/or their specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of police officers employed by the Town of Bloomfield, including defendants' Hammick, Danaher, Klomberg, and Suplee.

4.     Defendant, Chief Paul Hammick, was and is a resident of the County of Hartford and State of Connecticut, and was and is the Chief of Police of the Bloomfield Police Department.  Defendant Chief Hammick is employed by defendant Town of Bloomfield, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as the Chief of Police of the Bloomfield Police Department.

5.      As the Chief of Police for the Town of Bloomfield, defendant

Chief Hammick was responsible for the hiring, training, supervision, discipline, and conduct of

the defendant officers, and is further responsible for setting, reviewing, and/or enforcing the

policies and regulations of the Bloomfield Police Department.  Defendant Chief Hammick also is

responsible for ensuring the Town of Bloomfield Police Officers obey the laws of the State of

Connecticut and the United States of America.

6.      Upon information and belief, at all times relevant, defendant

Chief Hammick was and is a policymaker for the Bloomfield Police Department in all matters

that are alleged herein, and defendant Chief Hammick participated in the promulgation of

policies and/or customs for the Bloomfield Police Department by defendant

Town of Bloomfield.  Defendant Chief Hammick directly was responsible for policy and custom

implementation (in whole or in part) at the Bloomfield Police Department.  In addition,

defendant Chief Hammick is being sued in his individual capacity for damages caused by his

actions and/or conduct.

7.      Upon information and belief, defendant, K-9 Officer Brendan Danaher,

was and is a resident of the County of Hartford and State of Connecticut, and was and is a

K-9 Police Officer employed by the Town of Bloomfield at all times hereinafter mentioned.

Defendant K-9 Officer Danaher was acting within the scope of his employment and official

capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition,

defendant K-9 Officer Danaher is being sued in his individual capacity for damages caused by

his actions and/or conduct.

3

8.      Upon information and belief defendant, Detective Sergeant Zachary Klomberg, was and is a resident of the County of Hartford and State of Connecticut, and was and is a Detective Sergeant employed by the Town of Bloomfield at all times hereinafter mentioned.  Defendant Detective Sergeant Klomberg was acting within the scope of his employment and official capacity as a detective sergeant at the time of the incident giving rise to this lawsuit.  In addition, defendant Detective Sergeant Klomberg is being sued in his individual capacity for damages caused by his actions and/or conduct.

9.      Upon information and belief, defendant, Lieutenant Matthew Suplee, was and is a resident of the County of Hartford and State of Connecticut, and was and is a Police Lieutenant employed by the Town of Bloomfield at all times hereinafter mentioned.  Defendant Lieutenant Suplee was acting within the scope of his employment and official capacity as a police lieutenant at the time of the incident giving rise to this lawsuit.  In addition, defendant Lieutenant Suplee is being sued in his individual capacity for damages caused by his actions and/or conduct.

10.     At all relevant times, defendants, either personally or through their employees, were acting under the color of law and deprived Ms. Haidon of constitutional rights afforded under the United States Constitution and the Constitution of the State of Connecticut.

11.     Ms. Haidon brings this action against the named defendants seeking compensatory damages, declaratory judgment, punitive damages, other damages this Court deems just and proper, and attorneys' fee pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her Constitutionally-protected civil rights to intimate association, her due process right to care and custody of her child, and her right against false arrest.  Ms. Haidon's aforementioned rights are secured by the above-referenced statutes, the Constitution of the United States, the common law, and the Constitution of the State of Connecticut.

12.     At issue in this litigation is the Town of Bloomfield's actions, by and through the actions of its police officers, that violated Ms. Haidon's (1) right to intimate association; (2) due process right to care and custody of her child; and (3) right against false arrest.

## JURISDICTION AND VENUE

13.     This action is brought under the provisions of 42 U.S.C. § 1983, 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

14.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.  The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     Ms. Haidon further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

16.     Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred or otherwise caused injury within the Court's judicial district.

## FACTUAL BACKGROUND

17.     On April 23, 2015, Ms. Haidon and Matthew Couloute Jr. ("Mr. Couloute") agreed to a Separation Agreement, dissolving their marriage.  The order was approved the following day by Hartford District Superior Court Judge Jorge Simon.

18.     The Separation Agreement states Ms. Haidon likely would relocate beyond Connecticut.  However, it was never anticipated Mr. Couloute would relocate beyond Connecticut.

19.     In October 2016, Mr. Couloute abruptly vacated the State of Connecticut and relocated to Atlanta, Georgia, along with Xavier, his minor son from another relationship.

20.     After moving to Atlanta, Mr. Couloute ceased making his court-ordered child support payments to Ms. Haidon, thereby abandoning Ms. Haidon and their then-four-year-old daughter Sophia in Connecticut.

21.     Left to provide for Sophia on her own, Ms. Haidon was forced to apply for public assistance from the State of Connecticut, and she was eligible for and received both Supplemental Nutrition Assistance Program ("SNAP") benefits and HUSKY medical insurance for herself and Sophia.

22.     Despite these benefits, Ms. Haidon remained in dire need of help due to Mr. Couloute's failure to provide court-ordered support.  In November 2016, with nowhere else to turn, Ms. Haidon decided to temporarily relocate to her parents' home in West Seneca, New York.

23.     Before moving from Connecticut to West Seneca, Ms. Haidon notified Mr. Couloute of her financial hardship due to his failure to provide support, as well as of her need to move in temporarily with her parents.

24.     On November 21, 2016, Ms. Haidon filed a Notice Regarding Co-Parenting Orders, Post Judgment, with the Connecticut Superior Court in an effort to alert the Court that she was exercising her rights under the Separation Agreement and was temporarily relocating to West Seneca.

25.     Following her temporary relocation to West Seneca, Mr. Couloute continued to fail to pay his court-ordered child support payments to Ms. Haidon.  Further, he harassed Ms. Haidon from November 2016 to January 2017 by sending multiple e-mails, letters, text messages, and phone calls that threatened Ms. Haidon's arrest.

26.     On January 5, 2017, after harassing Ms. Haidon for several months, Mr. Couloute filed a Motion for Contempt alleging Ms. Haidon was violating the Separation Agreement by her temporarily staying with her parents in West Seneca, New York.  That same day, Mr. Couloute filed a Motion for Modification of the custody order pursuant to the Separation Agreement in an attempt to deprive Ms. Haidon of her custody of Sophia.  Neither of these motions were signed by a judge.  No immediate relief, such as a temporary injunction, was granted at this time.

27.     After months of financial neglect and harassment from Mr. Couloute, Ms. Haidon filed a petition in New York State Family Court, Erie County, to suspend Mr. Couloute's child custody.  On January 9, 2017, Judge Mary Carney of the New York State Family Court, Erie County signed a temporary court order suspending Mr. Couloute's child custody.

28.     Thereafter, on January 10, 2017, Ms. Haidon emailed Mr. Couloute notifying him of the temporary court order suspending his access to Sophia.

29.     Upon information and belief, furious by the existence of the temporary court order, Mr. Couloute contacted his friend, defendant K-9 Officer Brendan Danaher of the Bloomfield Police Department.  Mr. Couloute and defendant K-9 Officer Danaher became friendly through defendant K-9 Officer Danaher's father, Judge John A. Danaher, III, as Mr. Couloute and Judge Danaher previously worked together as prosecutors in Connecticut.

30.     Upon information and belief, exploiting this prior relationship, Mr. Couloute and defendant K- 9 Officer Danaher drafted a fraudulent application for an arrest warrant for Ms. Haidon.  This application for an arrest warrant for Ms. Haidon incorrectly stated Mr. Couloute's motion for contempt had been granted, although Mr. Couloute's motion, at this point, never was granted by a Connecticut judge, or a judge anywhere for that matter.

31.     Paragraph 6 of the April 23, 2015 Separation Agreement titled "Custody and Parenting Plan," expressly states that "Neither party shall remove the minor child *permanently* from the State of Connecticut without prior written approval of the other party or Court order" (emphasis added).

32.     Upon information and belief, Defendant K-9 Officer Danaher failed to investigate whether Ms. Haidon *permanently* removed Sophia from Connecticut and he neglected to review the court documents from Connecticut and New York.  Relying on Mr. Couloute's word alone, defendant K-9 Officer Danaher wrongfully assumed Ms. Haidon was not allowed to remove Sophia from the State of Connecticut.

33.     On January 12, 2017, defendant K-9 Officer Danaher submitted the arrest warrant application for Custodial Interference in the First Degree to the Superior Court of Connecticut.  Officer Danaher's application concluded that Ms. Haidon was not allowed to leave the state of Connecticut, even temporarily.

34.     Despite the fact that Mr. Couloute's statements easily could have been disproved by a brief inquiry into the legal documents, Prosecutor Danielle O'Connell and Judge Omar Williams signed a warrant for Ms. Haidon's arrest on January 23, 2017 and January 24, 2017, respectively.  Judge Williams relied on defendant K-9 Officer Danaher's multiple false statements in the warrant application in his decision to grant the arrest warrant.

35.     The court set bond of $10,000.00 with added conditions that Ms. Haidon abide by all of the Connecticut child custody agreements and orders.

36.     However, Ms. Haidon already was abiding by all of the Connecticut child custody agreements as she only temporarily was residing in New York due to the fact that Mr. Couloute was not paying child support, leaving her and their child destitute.

37.     On February 8, 2017, an Extradition Request was granted by Claudette Kosinski of the Connecticut State's Attorney's Office, thereby giving law enforcement the ability to enforce the arrest warrant for Ms. Haidon in New England, bordering states, and the entire East Coast, including West Seneca, New York.

38.     In the following weeks, Ms. Haidon repeatedly was harassed by Mr. Couloute, defendant K-9 Officer Danaher, and other law enforcement officials in an effort to arrest her, despite the fact that no due diligence was done.  Had defendant K-9 Officer Danaher and others in Connecticut performed an appropriate investigation and due diligence, it would have resulted in the conclusion that Mr. Couloute was using the Connecticut court system and his personal relationship with law enforcement to harass Ms. Haidon and that, in fact, Ms. Haidon was in compliance with the Separation Agreement.

39.     On February 14, 2017, Mr. Couloute filed an Emergency Ex Parte Order of Custody with the Superior Court of Connecticut, requesting that Sophia immediately be returned to Connecticut.

40.     In response, Ms. Haidon filed a Motion to Dismiss the Emergency Ex Parte Order of Custody on February 27, 2017.  On February 28, 2017, the Hartford Connecticut Superior Court gave temporary emergency jurisdiction over the custody proceedings to New York State Family Court, Erie County.

41.     Accordingly, a proceeding was scheduled regarding the Emergency Ex Parte Motion in front of Judge Mary Carney of New York State Family Court, Erie County. Based on her attorney's warning, Ms. Haidon did not appear in Family Court in Erie County for fear that she would be arrested and her daughter placed in Mr. Couloute's custody.

42.     As a result of the contentious circumstances between Ms. Haidon and Mr. Couloute, the Erie County Department of Social Services ("DSS") filed a Neglect Petition. Erie County Family Court granted the petition on March 1, 2017, giving Ms. Haidon's parents temporary custody of Sophia.

43.     Per the Family Court order issued on March 1, 2017, Ms. Haidon only was able to visit Sophia three times a week for a few hours at a time, under Ms. Haidon's father's supervision.

44.     Knowing that Sophia was now safe and worn down by months of harassment by Mr. Couloute and Connecticut law enforcement, Ms. Haidon was able to turn herself in to the authorities in Western New York on March 2, 2017.  Ms. Haidon was booked at the Erie County Holding Center and held overnight.

45.     On March 3, 2017, Ms. Haidon appeared in court in an orange jumpsuit, shackled around her ankles, hands, and waist, in front of her peers and family.

46.     Ms. Haidon waived her extradition rights in court and agreed to turn herself in to the Bloomfield Connecticut police, which she did on March 6, 2017.  Later that same day, Ms. Haidon was released from Bloomfield Connecticut police custody and returned to West Seneca, New York to be near her daughter.

47.     Because she was not entitled to custody at that point, Ms. Haidon was forced to pay to stay in a hotel alone, without her child or parents.  As a result, Ms. Haidon's unlawful arrest caused her to lose quality time with her daughter and to be away from her family, and forced her to pay costly living expenses from March 2017 until September 2017.

48.     After sustaining months of harassment from Mr. Couloute and the Bloomfield Police regarding the false arrest warrant sought by defendant K-9 Officer Danaher, and knowing that she had not violated the Separation Agreement, Ms. Haidon consulted her Connecticut attorney, Rachel Baird.  Ms. Baird advised Ms. Haidon that she had cause to challenge the validity of defendant K-9 Officer Danaher's affidavit in support of the application for a warrant for her arrest.

49.     Accordingly, Ms. Baird filed a Notice of Intent to file a *Franks* Hearing in the District of Hartford Superior Court on Ms. Haidon's behalf on March 6, 2017, the same day Ms. Haidon was released from Bloomfield Connecticut police custody.

50.     After being released from police custody, Ms. Haidon was required to travel to Connecticut every month to follow up with the unlawful Custodial Interference charge against her.  As a result, Ms. Haidon and her family spent a substantial amount of time and money traveling and defending these meritless charges against her.

51.     On August 17, 2017, after almost eight months of harassment by Mr. Couloute and law enforcement, the Hartford Superior Court dismissed the charge against Ms. Haidon for Custodial Interference in the First Degree.  In good faith and due to the dismissal of this charge, Ms. Haidon and Ms. Baird did not pursue the *Franks* hearing.

52.     Ms. Haidon has had long lasting negative effects on her life as a result of her unlawful arrest, including damage to her reputation, character, social standing, and ability to obtain gainful employment.  She also has sustained significant emotional trauma as a result of defendants' unlawful conduct.

53.     Due in part to the damage to Ms. Haidon's character and reputation, on September 14, 2017, the Connecticut Superior Court granted Mr. Couloute's Post-Judgment Motion for Modification of Custody and Visitation for primary physical custody, and Sophia was removed from her grandparents' custody in New York.

54.     From September 2017 until June 2018, Sophia was forced to live with Mr. Couloute full-time in Georgia.  During these nine months, Ms. Haidon only was able to see Sophia one time each month for a couple of days, and on some holidays.

55.     In total, Ms. Haidon did not have regular, physical custody of Sophia, to which she was entitled under the Custody Agreement, for one year and three months.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### Malicious Prosecution under 42 U.S.C. § 1983
### Against All Defendants

56.     Ms. Haidon incorporates the allegations contained in paragraphs 1 through 55 of this verified complaint as if fully set forth herein.

57.     Defendants unreasonably seized and unlawfully arrested Ms. Haidon in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

58.     Upon information and belief, defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Ms. Haidon for Custodial Interference in the First Degree, acted intentionally, and with malice to cause Ms. Haidon to be arrested, charged, and prosecuted for that violation, thereby violating Ms. Haidon's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

59.     But for defendants' unlawful and malicious conduct, Ms. Haidon would not have been arrested and/or prosecuted, requiring her to travel to Connecticut every month and spend a substantial amount of time and money contesting the meritless claims.

60.     On August 17, 2017, the prosecution of the charges levied by defendants against Ms. Haidon were terminated in Ms. Haidon's favor when the Hartford Superior Court dismissed the charge against her for Custodial Interference in the First Degree.

61.     Upon information and belief, defendants' actions and conduct were malicious and deprived Ms. Haidon of her liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his actions were lawful.

62.     As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**False Arrest under 42 U.S.C. §1983**
**<u>Against All Defendants</u>**

63.     Ms. Haidon incorporates the allegations contained in paragraphs 1 through 62 of this verified complaint as if fully set forth herein.

64.     Defendants are liable pursuant to 42 U.S.C. § 1983 for intentionally and unlawfully having Ms. Haidon arrested in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

65.    Defendants were acting under the color of law when Ms. Haidon was arrested.

66.    Ms. Haidon was conscious of the arrest, detainment, and or/confinement.

67.    Ms. Haidon was subjected to an illegal, false, and unlawful arrest as a result of acts and/or omissions by defendants, and was taken into custody, detained, and confined without probable cause, privilege, or consent.

68.    Defendants knew, or should have known, Ms. Haidon was not in violation of the Separation Agreement between Ms. Haidon and Mr. Couloute and that there was no probable cause in arresting Ms. Haidon and charging her with Custodial Interference in the First Degree.

69.    Defendants, through any investigation of due diligence, would and should have known that Ms. Haidon had not committed any crime.

70.    August 17, 2017, the prosecution of the charges levied by defendants against Ms. Haidon were terminated in Ms. Haidon's favor when the Hartford Superior Court dismissed the charge against her for Custodial Interference in the First Degree.

71.    As a result of defendants' actions, conduct, and bad faith, Ms. Haidon's freedom, liberty, and civil rights were denied, and she was detained and imprisoned against her will and without any good faith basis, reasonable suspicion, or probable cause.

72.     As a direct and proximate result of the foregoing, Ms. Haidon was

damaged and injured in an amount to be determined at trial.


### THIRD CLAIM FOR RELIEF

**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS**
**Violation of Due Process Right to Care and Custody of Child and**
**Right to Intimate Association under 42 U.S.C. §1983**
**<u>Against All Defendants</u>**


73.     Ms. Haidon incorporates the allegations contained in paragraph

1 through 72 of this verified complaint as if fully set forth herein.


74.     Ms. Haidon has a constitutionally protected liberty interest in the care,

custody, and management of her daughter and a substantial measure of sanctuary from

unjustified interference from the State.


75.     Ms. Haidon has been deprived of said liberty interest without due process

of law insomuch as defendants manifested contentious circumstances between Ms. Haidon and

Mr. Couloute based on a falsified arrest warrant application, and created coercive interference

from the Erie County Department of Social Services.


76.      Through their aforementioned actions and omissions, defendants deprived

Ms. Haidon of her rights sheltered by the Fourteenth Amendment against the State's unwarranted

usurpation, disregard, or disrespect.

77.     As a result of the defendants' unconstitutional conduct, Ms. Haidon was deprived of the regular, physical custody of her daughter, which she was entitled to under the Separation Agreement, for one year and three months.

78.     As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**Unlawful Seizure under 42 U.S.C. §1983**
**Against All Defendants**

79.     Ms. Haidon incorporates the allegations contained in paragraph 1 through 78 of this verified complaint as if fully set forth herein.

80.     Defendants intentionally, or at the very least, recklessly disregarded the truth in submitting and reviewing the arrest warrant application for Ms. Haidon's arrest.

81.     Defendants falsely attested that Mr. Couloute's Motion to Contempt had been granted and failed to investigate whether Ms. Haidon permanently had removed Sophia from the State of Connecticut.

82.     Probable cause would not exist absent defendants' false and misleading statement in an affidavit by defendant K-9 Officer Danaher to Judge William in the application

for a warrant for Ms. Haidon's arrest because it was wrongfully assumed that Ms. Haidon was not allowed to remove Sophia from the State of Connecticut.

83.    Defendants' reckless disregard for the truth, and their false and misleading statements were relied on by Prosecutor Danielle O'Connell and Judge Omar Williams in their decisions to grant the arrest warrant for Ms. Haidon.

84.    Ms. Haidon was subjected to an illegal, false, and unlawful arrest as a result of acts and/or omissions by defendants, and was taken into custody, detained, and confined without probable cause, privilege, or consent.

85.     Defendants' conduct and actions were done without lawful justification or reason and caused Ms. Haidon injury.

86.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability under 42 U.S.C. § 1983
### Against Defendant Town of Bloomfield

87.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 86 of this verified complaint as if fully set forth herein.

88.     Defendants were at all times relevant herein acting under the color of law. Upon information and belief, the disparate and unlawful treatment of Ms. Haidon is the consequence of a custom, practice, and/or policy.

89.     Upon information and belief, defendants Town of Bloomfield and Chief Hammick exercise final policymaking authority but failed to enforce and/or insure the enforcement of laws prohibiting disparate and unlawful treatment of individuals.

90.     Upon information and belief, defendant Town of Bloomfield has a custom, policy, and/or practice of allowing municipal officers to subject individuals to disparate and unlawful treatment, most notably by exploiting personal relationships, in violation of their constitutional rights.

91.     Upon information and belief, policy making defendants knew of past and present disparate and unlawful practices and policies in the Town of Bloomfield and the Bloomfield Police Department and have not acted to correct same.  Further, supervisory defendants knew or should have known, of the acts of the other defendants in creating and subjecting Ms. Haidon to disparate and unlawful treatment and did not act to prevent or correct same, acting with deliberate indifference, thus violating Ms. Haidon's constitutional rights.

92.     Upon information and belief, defendant Chief Hammick is an ad hoc member of the Public Safety Committee for defendant Town of Bloomfield and holds policy making authority.

93.     Upon information and belief, defendant Chief Hammick oversees the operations of the Bloomfield Police Department.  Further, as the superior of defendant K-9 Officer Danaher, defendant Chief Hammick ratified K-9 Officer Danaher's affidavit containing falsified information for the purpose of harassing, humiliating and arresting Ms. Haidon.

94.     As a direct result of defendant's custom, policy, and/or practice, Ms. Haidon has and continues to sustain injury and damages.

95.     As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### Conspiracy under 42 U.S.C. § 1983
### <u>Against Defendant K-9 Officer Danaher</u>

96.     Ms. Haidon incorporates the allegations contained in paragraph 1 through 95 of this verified complaint as if fully set forth herein.

97.     Upon information and belief, Defendant K- 9 Officer Danaher and Mr. Couloute conspired and intended to harass, humiliate, and arrest Ms. Haidon by exploiting their personal relationship and utilizing K-9 Officer Danaher's access to the Connecticut court system as an employee of the   Bloomfield Police Department.

98.     Upon information and belief, Defendant K-9 Officer Danaher committed an act in furtherance of this conspiracy by submitting an arrest warrant application containing falsified and untruthful information, which was relied on by Judge Omar Williams in his decision to grant the arrest warrant on January 24, 2017.

99.     Defendant K-9 Officer Danaher was acting under the color of law when he submitted the arrest warrant application and when Ms. Haidon was arrested.

100.     Upon information and belief, all defendants knew of defendant K-9 Officer Danaher and Mr. Couloute's plan to harass, humiliate, and arrest Ms. Haidon by submitting an arrest warrant application containing falsified information and were acting under the color of law at all times.

101.     Defendant K-9 Officer Danaher knew, or should have known, Ms. Haidon was not in violation of the Separation Agreement between Ms. Haidon and Mr. Couloute and that there was no probable cause in arresting Ms. Haidon and charging her with Custodial Interference in the First Degree.

102.     Defendant K-9 Officer Danaher and Mr. Couloute's unlawful acts and/or omissions subjected Ms. Haidon to an illegal, false, and unlawful arrest and as a result of defendants' actions, conduct, and bad faith, Ms. Haidon's freedom, liberty, and civil rights were denied.

23

103.    Defendant K-9 Officer Danaher's conduct and actions were done without lawful justification or reason and caused Ms. Haidon injury.

104.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### ABUSE OF PROCESS IN VIOLATION OF CONNECTICUT STATE LAW
Against All Defendants

105.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 104 of this verified complaint as if fully set forth herein.

106.    Defendants illegally initiated the arrest process against Ms. Haidon by submitting an arrest warrant application containing falsified information for Custodial Interference in the First Degree to the Superior Court of Connecticut.

107.    Defendants used the arrest process to wrongfully accuse Ms. Haidon of Custodial Interference in the First Degree and maliciously accuse her of violating the Separation Agreement.

108.    Following the unlawful granting of the arrest warrant, Ms. Haidon was forced to defend the meritless charges against her for six months before the Hartford Superior Court dismissed the charges against her.

24

109.     Defendants, through any investigation or due diligence, would, and should, have known that Ms. Haidon was not in violation of the Separation Agreement when she was temporarily residing in West Seneca, New York.

110.     Ms. Haidon was subjected to an illegal, false, and unlawful arrest as a result of the acts and/or omissions by defendant K-9 Officer Danaher, and was taken into custody, detained, and prosecuted for an improper purpose.

111.     As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### RESPONDEAT SUPERIOR LIABILITY
### Against Defendant Chief Hammick

112.     Ms. Haidon incorporates the allegations contained in paragraph 1 through 111 of this verified complaint as if fully set forth herein.

113.     At the time of the incident alleged in the complaint, defendants Bloomfield Police Department, Chief Hammick, K-9 Officer Danaher, Detective Sergeant Klomberg, and Lieutenant Suplee were acting in their official capacity as members of the Bloomfield Police Department and were engaged in actions and conduct during the course and scope of their duties that deprived Ms. Haidon of her constitutional rights and privileges.

114.    As a result of the conduct of defendants Bloomfield Police Department, Chief Hammick, K-9 Officer Danaher, Detective Sergeant Klomberg, and Lieutenant Suplee, defendant Town of Bloomfield is liable to Ms. Haidon pursuant to the state common law doctrine of respondeat superior. Upon information and belief, defendants Bloomfield Police Department, K-9 Officer Danaher, Detective Sergeant Klomberg, and Lieutenant Suplee were acting pursuant to defendant Town of Bloomfield's policy, custom, or practice, including, but not limited to, being inadequately trained and inadequately supervised on the rights and protections afforded to citizens by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

115.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**

**FALSE ARREST IN VIOLATION OF CONNECTICUT STATE LAW**
**<u>Against All Defendants</u>**

116.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 115 of this verified complaint as if fully set forth herein.

117.    Defendants intentionally and unlawfully had Ms. Haidon arrested in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

118.     Defendants were acting under the color of law when Ms. Haidon was arrested.

119.     Ms. Haidon was conscious of the arrest, detainment, and or/confinement.

120.     Ms. Haidon was subjected to an illegal, false, and unlawful arrest as a result of acts and/or omissions by defendants, and was taken into custody, detained, and confined without probable cause, privilege, or consent.

121.     Defendants knew, or should have known, Ms. Haidon was not in violation of the Separation Agreement between Ms. Haidon and Mr. Couloute and that there was no probable cause in arresting Ms. Haidon and charging her with Custodial Interference in the First Degree.

122.     Defendants, through any investigation of due diligence, would and should have known that Ms. Haidon had not committed any crime.

123.     August 17, 2017, the prosecution of the charges levied by defendants against Ms. Haidon were terminated in Ms. Haidon's favor when the Hartford Superior Court dismissed the charge against her for Custodial Interference in the First Degree.

124.    As a result of defendants' actions and conduct, Ms. Haidon's freedom, liberty, and civil rights were denied, and she was detained and imprisoned against her will and without any good faith basis, reasonable suspicion, or probable cause.

125.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

## MALICIOUS PROSECUTION IN VIOLATION OF CONNECTICUT STATE LAW
## Against All Defendants

126.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 125 of this verified complaint as if fully set forth herein.

127.    Defendants unreasonably seized and unlawfully arrested Ms. Haidon in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

128.    Upon information and belief, defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Ms. Haidon for Custodial Interference in the First Degree, acted intentionally, and with malice to cause Ms. Haidon to be arrested, charged, and prosecuted for that violation, thereby violating Ms. Haidon's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

129.    On August 17, 2017, the prosecution of the charges levied by defendants against Ms. Haidon were terminated in Ms. Haidon's favor when the Hartford Superior Court dismissed the charge against her for Custodial Interference in the First Degree.

130.    But for defendants' unlawful and malicious conduct, Ms. Haidon would not have been arrested and/or prosecuted.

131.    Upon information and belief, defendants' actions and conduct were malicious and deprived Ms. Haidon of her liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his actions were lawful.

132.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

**ELEVENTH CLAIM FOR RELIEF**

**NEGLIGENT HIRING, RETENTION, AND SUPERVISION IN VIOLATION OF CONNECTICUT STATE LAW**
**Against Defendants Town of Bloomfield and Chief Hammick**

133.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 132 of this verified complaint as if fully set forth herein.

134.     Upon information and belief, defendant Town of Bloomfield and Chief Hammick were aware that Bloomfield Police Department officers engaged in disparate and unlawful patterns and practices while acting under the color of law.

135.     Upon information and belief, defendant Town of Bloomfield and Chief Hammick failed to act to prevent or correct same, acting with deliberate indifference, thus violating Ms. Haidon's constitutional rights.

136.     Upon information and belief, defendant Chief Hammick had a duty to supervise defendant K-9 Officer Danaher as his superior and supervisor of the Bloomfield Police Department.

137.     Defendant Chief Hammick knew, or should have known, that K-9 Officer Danaher could, and would, use the court system to abuse his power as an officer of the law in order to further an unlawful act for his close personal friend.

138.     Upon information and belief, Defendant Chief Hammick failed to conduct due diligence and to investigate the falsified affidavit produced by K-9 Officer Danaher. Further, defendant Chief Hammick failed to recognize that defendant K-9 Officer Danaher was submitting a falsified affidavit on behalf of his close personal friend, Mr. Couloute, for the purpose of harassing, humiliating, and arresting his close personal friend's ex-wife.

139.     Upon information and belief, defendant Chief Hammick became aware, or should have been aware, of the falsified affidavit produced by defendant K-9 Officer Danaher indicating defendant K-9 Officer Danaher's lack of fitness for his position with the Bloomfield Police Department.  Further, Chief Hammick failed to recognize and acknowledge that defendant K-9 Officer Danaher's unfitness would likely cause harm to Ms. Haidon.

140.     As a result of defendants' actions and conduct, Ms. Haidon's freedom, liberty, and civil rights were denied, and she was detained and imprisoned against her will and without any good faith basis, reasonable suspicion, or probable cause.

141.     As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF

### DEFAMATION IN VIOLATION OF CONNECTICUT STATE LAW
### Against Defendants Hammick, Danaher, Klomberg, and Suplee

142.     Ms. Haidon incorporates the allegations contained in paragraph 1 through 141 of this verified complaint as if fully set forth herein.

143.     Ms. Haidon was booked at the Bloomfield Police Department on March 6, 2017.  Defendants took Ms. Haidon's mug shot during her booking.

144.    Defendants identified Ms. Haidon as the person in the mug shot taken on March 6, 2017.

145.    Defendants subsequently unlawfully gave Ms. Haidon's mug shot to Mr. Couloute.

146.    Ms. Haidon's mug shot was placed on several defamatory websites publicizing malicious and untruthful statements regarding Ms. Haidon's personal and professional life.  Ms. Haidon's mug shot was searchable via the internet by simply typing Ms. Haidon's name.

147.    Defendants intentionally, or at the very least, recklessly humiliated and embarrassed Ms. Haidon through the publication of her mug shot.

148.    As a result of defendants' publication and release of Ms. Haidon's mug shot to Mr. Couloute, Ms. Haidon has suffered mental anguish, embarrassment, humiliation, and emotional suffering.

149.    In addition, the publication of Ms. Haidon's mug shot has contributed to long lasting negative effects on her life, including, but not limited to, damage to her reputation, character, social standing, and ability to obtain gainful employment.

150.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## THIRTEENTH CLAIM FOR RELIEF

### CONSPIRACY IN VIOLATION OF CONNECTICUT STATE LAW
### <u>Against Defendant K-9 Officer Danaher</u>

151.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 150 of this verified complaint as if fully set forth herein.

152.    Upon information and belief, Defendant K-9 Officer Danaher and Mr. Couloute conspired and intended to harass, humiliate, and arrest Ms. Haidon by exploiting their personal relationship and utilizing K-9 Officer Danaher's access to the Connecticut court system as an employee of the Bloomfield Police Department.

153.    Defendant K-9 Officer Danaher committed an act in furtherance of this conspiracy by submitting an arrest warrant application containing falsified and untruthful information, which was relied on by Judge Omar Williams in his decision to grant the arrest warrant on January 24, 2017.

154.    Defendant K-9 Officer Danaher was acting under the color of law when he submitted the arrest warrant application and when Ms. Haidon was arrested.

155.    Upon information and belief, all defendants knew of defendant K-9 Officer Danaher and Mr. Couloute's plan to harass, humiliate, and arrest Ms. Haidon by submitting an arrest warrant application containing falsified information and were acting under the color of law at all times.

156.    Defendant K-9 Officer Danaher knew, or should have known, Ms. Haidon was not in violation of the Separation Agreement between Ms. Haidon and Mr. Couloute and that there was no probable cause in arresting Ms. Haidon and charging her with Custodial Interference in the First Degree.

157.    Defendant K-9 Officer Danaher and Mr. Couloute's unlawful acts and/or omissions subjected Ms. Haidon to an illegal, false, and unlawful arrest and as a result of defendants' actions, conduct, and bad faith, Ms. Haidon's freedom, liberty, and civil rights were denied.

158.    Defendant K-9 Officer Danaher's conduct and actions were done without lawful justification or reason and caused Ms. Haidon injury.

159.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## FOURTEENTH CLAIM FOR RELIEF

## MUNICIPAL LIABILITY UNDER CONNECTICUT STATE LAW
### Against Defendant Town of Bloomfield

160.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 159 of this verified complaint as if fully set forth herein.

161.    Upon information and belief, under Connecticut law, municipalities are exposed to liability for the discretionary acts of municipal employees when the acts involve malice, wantonness, or intent to injure.

162.    Under Connecticut law, municipalities have the power to provide for police protection and regulate and prescribe the duties of the persons providing police protection. Thus, the Bloomfield Police Department is a sub-unit or agency of the Town of Bloomfield through which it fulfills its policing function.

163.    Upon information and belief, defendant K-9 Officer Danaher is an employee for the Bloomfield Police Department and is therefore a municipal employee.

164.     Upon information and belief, defendant K-9 Officer Danaher, despite knowing that probable cause did not exist to detain, arrest, and prosecute Ms. Haidon for Custodial Interference in the First Degree, acted intentionally, and with malice to cause Ms. Haidon to be arrested, charged, and prosecuted for that violation by submitting an affidavit containing falsified information to the Hartford Connecticut Superior Court.

165.     Defendant K-9 Officer Danaher submitted the falsified affidavit with the intent to harass, humiliate, and arrest Ms. Haidon.

166.     Defendant K-9 Officer Danaher was acting under the color of law when Ms. Haidon was arrested.

167.     As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## FIFTEENTH CLAIM FOR RELIEF

### FAILURE TO INTERVENE
### Against Defendants Chief Hammick, Detective Sergeant Klomberg, Lieutenant Suplee

168.     Ms. Haidon incorporates the allegations contained in paragraph 1 through 167 of this verified complaint as if fully set forth herein.

169.     Upon information and belief, all law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers.

170.     Upon information and belief, defendants Chief Hammick, Detective Sergeant Klomberg, and Lieutenant Suplee were made aware, or should have been, of defendant K-9 Officer Danaher's falsified and unlawful affidavit produced with an arrest warrant application for Ms. Haidon, and they breached their duty to intervene when they aided, abetted,

and participated in defendant K-9 Officer Danaher's scheme to deprive Ms. Haidon of her constitutional rights.

171.    Defendants Chief Hammick, Detective Sergeant Klomberg, and Lieutenant Suplee's breach of their duty to intervene was the proximate cause of Ms. Haidon's damage by virtue of their failure to act and intervene on Ms. Haidon's behalf while her constitutionally protected rights were infringed.

172.    As a direct and proximate result of the foregoing, Ms. Haidon was damaged and injured in an amount to be determined at trial.

## SIXTEENTH CLAIM FOR RELIEF

### ATTORNEYS' FEES AND COSTS UNDER 42 U.S.C. § 1988
### Against All Defendants

173.    Ms. Haidon incorporates the allegations contained in paragraph 1 through 172 of this verified complaint as if fully set forth herein.

174.    The foregoing events constitute violations of Ms. Haidon's statutory and constitutional rights, thereby entitling her to attorney's fees, costs and disbursements as permitted by 28 U.S.C. § 1988.

**DEMAND FOR JURY TRIAL**

175.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ms. Haidon demands a trial by jury in this action of all issues so triable.

**PRAYER FOR RELIEF**

Plaintiff, Lauren Haidon, prays for relief and demands judgment as follows:

1.    That Ms. Haidon be rewarded compensatory damages against all defendants in an amount to be determined at trial;

2.    That Ms. Haidon be awarded punitive damages against defendants Chief Hammick, K-9 Officer Danaher, Detective Sergeant Klomberg, Lieutenant Suplee in an amount to be determined as trial;

3.    That this Court, pursuant to 42 U.S.C. § 1988, issue and order awarding plaintiff reasonable attorneys' fees, together with the costs of this action against all defendants; and

4.      That this Court award such other further relief, together with any other

legal or equitable relief, or both, as the Court deems just and proper.


Dated:          January 24, 2019


                              **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                              Attorney for Plaintiff

                              */s/ Marco Cercone*

                              _____
                              Marco Cercone, Esq. (seeking admission *pro hac vice*)
                              1600 Liberty Building
                              Buffalo, New York 14202-3694
                              Phone:  (716) 854-3400
                              cercone@ruppbaase.com


                              **DILWORTH IP, LLC**
                              Attorney for Plaintiff


                              */s/ Benjamin J. Lehberger*

                              _____
                              Benjamin J. Lehberger, Esq. (ct26880)
                              2 Corporate Drive, Suite 206
                              Trumbull, Connecticut 06611
                              Phone:  (203) 220-8496
                              blehberger@dilworthip.com
                              dilworthip@dilworthip.com