UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAUREN HAIDON,<br>    Plaintiff,<br><br>    v.<br><br>TOWN OF BLOOMFIELD, et al.,<br>    Defendants. | No. 3:19-cv-119 (SRU) |

## ORDER

At bottom, this is a case about a custodial dispute between the plaintiff, Lauren Haidon, and her ex-husband, Matthew Couloute, Jr. As a result of the dispute, Haidon alleges that Couloute enlisted the help of a friend—defendant Brendan Danaher, a K-9 police officer in the Town of Bloomfield—to submit a fraudulent arrest warrant application against Haidon for Custodial Interference in the First Degree. A judge signed the arrest warrant, and Haidon was forced to turn herself in to authorities.

Haidon later sued the Town of Bloomfield, Danaher, three supervisors in the Bloomfield Police Department, and several unidentified Bloomfield Police Officers. I granted in part the defendants' motion to dismiss. *See* Min. Entry, Doc. No. 43. Now, Danaher is the only defendant remaining in this action. *See* Am. Compl., Doc. No. 45, at ¶¶ 59–120 (asserting claims for malicious prosecution, false arrest, violation of the right to intimate association, and abuse of process).

Currently, this case is in discovery, which has been contentious.[1] Recently, plaintiff's counsel took the depositions of defendant Danaher and the three supervisory officers who were

---

[1] The parties have submitted numerous letters, notices, and motions raising various issues. *See* Notices, Doc. Nos. 72–74; Mot., Doc. No. 78. On several occasions, the parties have also called my chambers during depositions to ask me to resolve certain disputes.

formerly defendants (together, the "Movants"). Apparently, at each of those depositions, defense counsel requested that plaintiff's counsel agree that the transcripts and recordings of those depositions would not be disseminated to third parties. *See* Mem. in Supp. Movants' Mot. for Protective Order ("Movants' Mot."), Doc. No. 85-1, at 2. Plaintiff's counsel refused to make that stipulation. Thus, the Movants made a motion for a protective order pursuant to Rule 26(c) that would "limit[] the use of any video or audio recording and/or transcripts of the depositions of the [Movants] to the prosecution and defense of this matter." *Id.* at 7. Subsequently, Haidon filed an opposition, which was also styled as a cross-motion to strike a certain reference to Haidon in the Movants' motion. *See* Haidon's Opp'n/Mot. to Strike ("Haidon's Opp'n"), Doc. No. 91-3.[2] For the following reasons, the Movants' motion for a protective order is **granted**, and Haidon's motion to strike is **denied without prejudice**.

### I. Relevant Law

#### A. Three Sources of Law: First Amendment, Common Law, and Rule 26(c)

The First Amendment provides a qualified right of public access to criminal and civil trials. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (criminal trials); *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (civil trials). The First Amendment also provides a qualified right of public access to various other judicial

---

[2] There was a small flurry of activity between the Movants' filing their motion for a protective order and Haidon's filing her opposition. The day after the Movants filed their motion for a protective order, I issued an order mandating that the "at-issue deposition transcripts and recordings shall be treated as 'Designated Material' pursuant to this Court's standing protective order" until I ruled on the Movants' motion. *See* Order, Doc. No. 86. A couple days later, the Movants made a motion to "amend and retract." *See* Mot. to Amend and Retract, Doc. No. 87. In their motion for a protective order, the Movants described a particular website that contained articles regarding this case and identified Paul Boyne as the person who ran that website. *See* Movants' Mot., Doc. No. 85-1, at 3. In their motion to amend and retract, the Movants "retracted" their identification of Paul Boyne and clarified that they "make no representation to this Court, or to the public in general, as to who the operator of the 'Family Court Circus' website is." Mot. to Amend and Retract, Doc. No. 87, at 1. I denied as moot the Movants' motion to amend and retract because it "d[id] not ask for judicial relief," but, rather, "clarifie[d] an earlier filing." Order, Doc. No. 88.

proceedings in both criminal and civil cases, such as *voir dire*, pretrial suppression hearings, bail hearings, and hearings before certain administrative forums. *See New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 297–98 (2d Cir. 2012) (citing cases).

Both the First Amendment[3] and the common law[4] also provide a presumptive right of public access to "judicial documents." A "judicial document" is an item filed with the court that is "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). "Such documents are presumptively public so that the federal courts have a measure of accountability and so that the public may have confidence in the administration of justice." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")) (cleaned up).

At issue here are deposition transcripts and recordings. I have not yet seen or relied on any portion of those transcripts and recordings. The relevant transcripts and recordings have not been submitted in connection with the instant (or any other) motion. Thus, the deposition transcripts and recordings at issue here are not "judicial documents." *See S.E.C. v. TheStreet.com*, 273 F.3d 222, 233 (2d Cir. 2001) (holding that "deposition discovery material[s]"

---

[3] There are "two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)) (cleaned up). "The first approach considers experience and logic: that is, whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (cleaned up). "The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (cleaned up).

[4] The common law presumption of public access to judicial documents has been "said to predate the Constitution" and recognizes "the general right to inspect and copy public records and documents, including judicial records and documents." *Bernstein*, 814 F.3d at 142 (quoting, first, *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995), and, second, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)) (cleaned up).

are not "judicial documents" because they are "documents that play no role in the performance of Article III functions") (cleaned up).

Rule 26(c) governs a district court's decision whether to issue a protective order regarding materials that are not "judicial documents." *See Burgess v. Town of Wallingford*, 2012 WL 4344194, at *9 (D. Conn. Sept. 21, 2012) ("When the materials in question are deemed non judicial, then there is no presumption of public access, and the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order.") (cleaned up). Rule 26(c) reads:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed. R. Civ. P. 26(c)(1). "The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion." *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (cleaned up).

      B.      <u>Assessing "Good Cause" Under Rule 26(c)</u>

At least in this Circuit, district courts have not fully settled on a test for evaluating what may amount to "good cause" under Rule 26(c). *See Schoolcraft v. City of New York*, 2013 WL 4534913, at *3 (S.D.N.Y. Aug. 27, 2013) (describing "a split within the district courts of this Circuit as to the showing necessary to establish that good cause exists"). "Some courts have held that the party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection, and thus broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id.* (citing *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)). "Other courts, however, have dispensed with the specificity requirement, only demanding that

4

the moving party show good cause." *Id.* (citing *Topo v. Dhir*, 210 F.R.D. 76, 77 (S.D.N.Y. 2002)) (cleaned up).[5] So far as I am aware, the Second Circuit has not yet weighed in on the issue.[6]

In my view, at least with respect to deposition transcripts and recordings, there will very frequently (if not almost always) be "good cause" to grant a party's request for a protective order seeking to limit the use of those materials to the litigation of the case at hand. To be sure, in certain instances, "good cause" will not exist. Those situations might include instances in which the public interest in the case is large, or when the deposition testimony at issue may be particularly important in other litigation. My view of Rule 26(c)'s good cause standard is informed by the purpose of the federal discovery regime, the language and structure of the Federal Rules, and case law.

Before the Federal Rules of Civil Procedure were enacted in 1938, "the availability of discovery . . . was minimal." Paul V. Niemeyer, *Revisiting the 1938 Rules Experiment*, 71 WASH & LEE L. REV. 2157, 2161 (Fall 2014); *see also Hickman v. Taylor*, 329 U.S. 495, 500–01 (1947) (noting that, before enactment of the Federal Rules, "[i]nquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method"). That status quo reflected the reality that pretrial discovery, including depositions, "were not open to the public at common

---

[5] Although courts may disagree on the proper standard in evaluating "good cause," it is beyond dispute that the district courts' ability to enter protective orders regarding discovery materials is vital, given the liberal thrust of the Federal Rules' discovery provisions (discussed further below). *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)."); *TheStreet.com*, 273 F.3d at 229 ("Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless 'annoyance, embarrassment, oppression, or undue burden or expense.'") (citing Fed. R. Civ. P. 26(c)).

[6] By contrast, the Third Circuit has laid out a seven-factor, non-exhaustive test to guide district courts in evaluating whether "good cause" exists under Rule 26(c). *See In re Avandia Mktg., Sales Practices & Prods. Liability Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787–91 (3d Cir. 1994)).

law." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *see also Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 389 (1979) ("Under English common law, the public had no right to attend pretrial proceedings."); *Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009) ("At common law, pretrial proceedings were closed to the public."); *Times Newspapers Ltd. (Of Great Britain) v. McDonnell Douglas Corp.*, 387 F. Supp. 189, 194–97 (C.D. Cal. 1974) (describing Founding-era statues and cases that demonstrated importance of "the privacy of depositions and the sealing of them").

The enactment of the Federal Rules in 1938 revolutionized discovery by broadening its scope. Under the Federal Rules, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2001 (3d ed.) (updated June 2021) ("The scope of discovery was broadened and the restrictions imposed upon it were directed chiefly at the use of, rather than the acquisition of, the information discovered."). On top of the Federal Rules' broad discovery provisions, the Supreme Court has made clear that courts must broadly interpret those provisions. *See Hickman*, 329 U.S. at 507 (instructing that "the deposition-discovery rules," in particular, "are to be accorded a broad and liberal treatment"). In practice, then, the universe of potential discovery in any given case is vast.

Not only is the universe vast—it is intentionally overbroad. For instance, testimony elicited at a deposition will often be entirely irrelevant to a lawsuit. *See* Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to objection."); *Rhinehart*, 467 U.S. at 33 ("Much of the information that surfaces during pretrial discovery may be unrelated, or only

tangentially related, to the underlying cause of action."); *Amodeo II*, 71 F.3d at 1048 ("[I]t must be recognized that an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power. . . . [T]he temptation to leave no stone unturned in the search for evidence material to a judicial proceeding turns up a vast amount of not only irrelevant but also unreliable material."). Still, the Federal Rules favor a policy of allowing a party to collect even objectionable deposition testimony through the discovery process.

Given the extensive amount of information that might be exchanged through discovery, it is important to keep in mind the *purpose* animating the Federal Rules' expansion of the discovery regime. As the Supreme Court has explained, the "sole purpose" of the Federal Rules' liberalizing pretrial discovery was to "assist[] in the preparation and trial, or the settlement, of litigated disputes." *Rhinehart*, 467 U.S. at 34; *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public."). Put simply, the Federal Rules' broad discovery regime is meant to assist parties in resolving a particular case.

That purpose has almost nothing to do with the public. Instead, that purpose is fully consistent with discovery materials' remaining private in the mine run of cases. As already described, the public had no presumptive right of access to pretrial depositions at common law. And there is no reason to believe that the enactment of the Federal Rules altered that status quo. *See Bond*, 585 F.3d at 1074 ("At common law, pretrial proceedings were closed to the public, and the federal discovery rules have not changed this common-law tradition.") (cleaned up); *Samantar v. Yousef*, 560 U.S. 305, 320 n.13 (2010) ("Congress is understood to legislate against a background of common-law principles, and when a statute covers an issue previously governed

by the common law, we interpret the statute with the presumption that Congress intended to retain the substance of the common law.") (cleaned up).

In keeping with that tradition, as a matter of long-standing practice (at least), depositions are conducted in private. *See Rhinehart*, 467 U.S. at 34 (explaining that pretrial depositions "were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice") (cleaned up); D. Conn. L. Civ. R. 30(a) ("Depositions on oral examination or on written interrogatories are deemed to constitute private proceedings which the public is not entitled to attend."); 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2041 (3d ed.) (updated Apr. 2021) ("[I]t has been held that neither the public nor representatives of the press have a right to be present at the taking of a deposition."); *Equal Emp't Opportunity Comm'n v. Joslin Dry Goods Co.*, 2006 WL 8461627, at *1 (D. Colo. Aug. 25, 2006) ("[T]here is no right for the public to attend a deposition or observe any part of the discovery process."); David F. Herr, et al., *§ 14:11. Preliminary Deposition Considerations— Persons Present at the Deposition*, Fundamentals of Litigation Practice § 14:11 (2021 ed.) ("Courts have declared depositions to be private proceedings closed to the public."). Further to the point, since 2000, the Federal Rules have provided that records of depositions "must not be filed until they are used in the proceeding or the court orders filing." Fed. R. Civ. P. 5(d)(1)(A); *see also* D. Conn. L. Civ. R. 5(f)1 (similar).

Recognizing all of the above, many courts and commentators have (correctly, in my view) remarked that neither Rule 26(c)—nor any other source of law—implies a presumptive right of public access to unfiled discovery materials. *See, e.g.*, *Bond*, 585 F.3d at 1075; *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, 2013 WL 4012772, at *11 (D. Conn. Aug. 5, 2013) ("Put simply, the public has no constitutional, statutory, or common-law right of access

8

to unfiled discovery."); *United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("Because discovery is a private process between the parties to an action (even if governed by specific rules and managed by trial judges), courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible."); Richard L. Marcus, *A Modest Proposal: Recognizing (At Last) That the Federal Rules Do Not Declare That Discovery Is Presumptively Public*, 81 CHI.-KENT L. REV. 331, 348 (2006) ("[W]hen considering the framework of the Rules and the background of their adoption, the notion of presumptive public access to all discovery fruits seems alien.").

Nevertheless, certain courts have focused on the "good cause" standard in Rule 26(c) in holding the opposite—that the public enjoys a presumptive right of access to materials exchanged in discovery. *See San Jose Mercury News, Inc. v. US Dist. Court – Northern Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (asserting that "the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public," and that "Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown"); *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) ("It is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public."). Of course, those decisions are out-of-circuit and do not bind me.

However, in 1987 the Second Circuit seemingly adopted a similar position. In *In re Agent Orange Prod. Liability Litig.*, the Second Circuit asserted that "if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." 821 F.2d 139, 145 (2d Cir. 1987). In making that assertion, the *Agent Orange* Court relied heavily on the language of both Rule 26(c) *and* Rule 5(d), which in 1987 "require[d] that all discovery materials must be filed with the district court, unless the

9

court orders otherwise." *Id.* at 145–46 (holding that "Rule 5(d) and Rule 26(c) provide a statutory right of access to the discovery materials in question"). However, Rule 5(d) was amended in 2000 and now requires the *opposite* of what it required in 1987: Now, discovery materials "must not be filed until they are used in the proceeding or the court orders filing." Fed. R. Civ. P. 5(d)(1)(A).

To the extent that the *Agent Orange* Court's above-referenced assertion constituted a "holding," in my view it has been abrogated by the 2000 amendment to Rule 5(d) and subsequent Second Circuit case law. In 2001, the Second Circuit explicitly clarified that *Agent Orange* should *not* be interpreted to suggest that there is a rule within the Second Circuit of a presumptive right of public access to discovery materials. *See TheStreet.com*, 273 F.3d at 231 n.9 ("At least one District Court in our Circuit has incorrectly concluded that *Agent Orange* established a new rule that created a presumption that discovery materials should be publicly available whenever possible, i.e., absent a showing of good cause for shielding them from view.") (cleaned up). In the same case, the Second Circuit remarked upon the importance of the 2000 amendment to Rule 5(d) and how it weakened the reasoning of the *Agent Orange* Court. *See id.* at 233 n.11 (remarking that the 2000 amendment to Rule 5(d) "provides no presumption of filing all discovery materials, let alone public access to them" and thus rejecting the argument that *Agent Orange* "carve[d] out" a "presumption in favor of access to all discovery materials" based on "a statutory right of access to discovery materials").

Other courts and commentators have also focused on the importance of the 2000 amendment to Rule 5(d) in undermining the reasoning employed in *Agent Orange*. *See, e.g.*, *Bond*, 585 F.3d at 1076 (noting that the rationale in *Agent Orange* "was destroyed by the 2000 amendment to Rule 5(d), which reversed the longstanding rule generally requiring discovery to

10

be filed with the court"); 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2042 (3d ed.) (updated Apr. 2021) (explaining that the 2000 amendment to Rule 5(d) "has weakened arguments that there is a presumptive public right of access to" discovery materials); 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1152 (4th ed.) (updated Apr. 2021) ("By eliminating the presumption that all discovery materials will be filed, the 2000 amendment to Rule 5(d) likewise removed the presumption in favor of allowing unlimited access to discovery materials."). In my view, then, *Agent Orange* does not compel me to conclude that the Federal Rules establish a presumptive right of public access to discovery materials.

The fact that Rule 26(c)'s good cause requirement will often be satisfied does not render the Rule superfluous: It simply ensures that the Rule's purpose—ensuring the privacy of discovery materials that should, indeed, be kept private—can be properly effectuated.[7] First, as described elsewhere in this ruling, there are instances in which Rule 26(c)'s good cause requirement will not be satisfied. Second, because a protective order issued pursuant to Rule 26(c) is a court order, the violation of such an order might justify certain sanctions that would otherwise be unavailable or less appropriate. For instance, a court might hold a party in civil contempt for violating a court-issued order. *See, e.g.*, *Paramedics Electromedicina Comercial,*

---

[7] Relatedly, this Court's standing protective order ("SPO") effectively allows parties in civil cases to keep deposition transcripts private. *See* SPO, Doc. No. 4. The SPO allows a party to "designate" "[d]eposition transcripts or portions thereof" either when the testimony is recorded or within ten days from the date the deposition transcript is made available. *See id.* at ¶ 13. By designating such transcripts as "Designated Material," the designating party can ensure that those transcripts "shall not be used or disclosed for any purpose other than the litigation of this action," subject to limited exceptions as set forth in the SPO. *See id.* at ¶ 5. The burden then shifts to the opposing party to oppose that designation, if warranted. *See id.* at ¶ 12. Thus, this Court's SPO also indicates that, in practice at least, deposition transcripts may be kept private as a matter of course in civil litigation. *See Scanlan v. Town of Greenwich*, 2021 WL 1352994, at *3–11 (D. Conn. Apr. 12, 2021) (discussing privacy of deposition transcripts that had been designated pursuant to the SPO). Furthermore, as discussed above with respect to parties who violate protective orders issued pursuant to Rule 26(c), when deposition transcripts have been designated pursuant to the SPO—a court order—and a party improperly disseminates or uses those transcripts, a court might impose enhanced sanctions on the transgressing party.

*Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (describing the legal test applicable to holding a party "in civil contempt for failure to comply with a court order"); *Denis v. Cty. of Nassau*, 2019 WL 7372957, at *5 (E.D.N.Y. Dec. 31, 2019) (explaining that "the underlying concern" warranting punishment of civil contempt "is disobedience to the orders of the judiciary . . . ") (cleaned up); 18 U.S.C. § 401 (allowing federal court to punish "contempt of its authority" when, in relevant part, a party displays "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command").  Further, a court might impose discovery sanctions pursuant to Rule 37(b)(2)(A) if—but only if—a transgressor has violated a prior court-issued discovery order.  *See Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020).[8]

To sum up:  No source of law or authority creates a presumptive right of public access to pretrial discovery materials, such as the deposition transcripts or recordings at issue in this case.  In general, because the scope of permissible discovery (and potential deposition testimony) is broad, and because the purpose animating that broadness is to aid in the litigation and resolution of the action at hand, I view Rule 26(c)'s "good cause" standard as a low hurdle to clear when the applicant seeks a modest protective order limiting the use of deposition transcripts and recordings to litigation of the instant case.

## II.     The Parties' Arguments

---

[8]      I acknowledge that it is not beyond cavil that protective orders issued pursuant to Rule 26(c) are "order[s] to provide or permit discovery," which are subject to Rule 37(b) sanctions.  *See, e.g.*, Adam M. Josephs, *The Availability of Discovery Sanctions for Violations of Protective Orders*, 80 U. CHI. L. REV. 1355, 1356 (Summer 2013) (acknowledging that "the vast majority of courts have held" that Rule 37(b) "sanctions can be applied to Rule 26(c) protective orders," but noting that some courts do not treat Rule 26(c) protective orders as "discovery orders" subject to Rule 37(b) sanctions); *compare Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) (Rule 37(b) sanctions available for violation of Rule 26(c) protective orders) *with Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001) (Rule 37(b) sanctions not available for violation of Rule 26(c) protective orders).

The Movants argue that good cause exists for me to issue the requested protective order for two reasons.  First, the Movants are law enforcement personnel, so they "have a unique interest in not having audio or video recordings of them[] publicized."  Movants' Mot., Doc. No. 85-1, at 5.  According to the Movants, law enforcement personnel's "weight, height, eye color, hair color, etc." are "typically exempt from disclosure to the public."  *Id.*  The Movants also mention that the relevant deposition transcripts "contain irrelevant personal information, including the defendant's disciplinary history, and information concerning other police investigations concerning the plaintiff's criminal complaints of sexual and domestic abuse directed toward her non-party husband, which investigations did not result in convictions."  *Id.* at 6–7.  Second, the Movants argue that Haidon, "through third-parties, has repeatedly sought to threaten, harass, embarrass, and prejudice" the Movants by "posting threats, abusive comments, and defamatory statements" on a particular blog.  *See id.* at 3, 5.  The Movants claim that through that blog, Haidon "may seek to taint or prejudice a potential jury pool in this matter."  *Id.* at 5.  The Movants assert that "[u]pon information and belief, [Haidon] is the impetus or source" of the offensive blog posts.  *Id.* at 3.

In opposition, Haidon argues that good cause does not exist to issue a protective order and also asks me to strike the Movants' reference to her as the "impetus or source" of the relevant blog posts.  *See* Haidon's Opp'n, Doc. No. 91-3, at 4–5.  Regarding the lack of good cause, Haidon points out that the Movants "have failed to allege *any* specific harm to support [their] request . . . , and the broad public interest in access to these records weighs strongly against sealing [the Movants'] deposition transcripts and videotapes."  *Id.* at 2.[9]  Haidon cites several cases in this Circuit that have declined to issue protective orders regarding deposition

---

[9]    Haidon concedes, though, that there is good cause to "remove[] from public view" all personally identifying information included in the deposition transcripts or recordings.  Haidon's Opp'n, Doc. No. 91-3, at 2.

transcripts and recordings. *See id.* at 4. Without citation, Haidon argues that "[p]ublic access to . . . discovery materials[] furthers the democratic process by providing information for public discourse." *Id.* Relatedly, Haidon contends that "there is a strong public interest in access to discovery documents in this case" because the case "pertains to the official actions of government officials . . . ." *Id.* at 6–7. In Haidon's view, that public interest "outweighs any speculative harm alleged by the officers." *Id.* at 7. Finally, Haidon claims that she is not involved with the relevant blog and "merely seeks to protect her right to provide public access to the deposition transcripts and videos to expose Defendant's reasons and excuses for depriving her of access to her child . . . ." *Id.* at 8.

### III.   Application

Applying my understanding of the law (as described above) to the facts of this case, it should come as no surprise that I will **grant** the Movants' motion for a protective order that limits the use of the Movants' deposition transcripts and recordings to the litigation of this case. Although the Movants' arguments are relatively weak,[10] that does not matter much. I have already explained why, in the mine run of cases (including this one), pretrial discovery should remain private. The Movants' (relatively) general interest in their privacy is thus a legitimate concern supporting "good cause" to issue their requested protective order.

---

[10] For instance, it is difficult to see why the Movants would worry about ensuring the secrecy of their "weight, height, eye color, [and] hair color." Movants' Mot., Doc. No. 85-1, at 5. More substantially, though, the Movants report that the deposition transcripts and recordings may contain other personal information and their disciplinary histories. Those are weightier concerns that seem to implicate the Movants' privacy. Further, my independent review of the website at issue confirms that the Movants' concerns regarding their personal information are legitimate. The relevant website contains several blog posts mentioning the Movants. In addition, in an unrelated blog post, the website lists the home address of a state court judge and refers to her as "a domestic enemy of the Constitution and [] a cult master to the detriment of the people." It is reasonable for the Movants to believe that the relevant blog would be particularly interested in personal information revealed in the Movants' deposition transcripts and recordings.

Haidon's counterarguments are unpersuasive. First, Haidon cites several cases in which district courts have denied similar motions for protective orders because the movants had not established good cause under Rule 26(c). *See* Haidon's Opp'n, Doc. No. 91-3, at 4. In large part, those cases are distinguishable.[11] More importantly, I do not deny that certain courts have denied motions for protective orders that sought to limit the dissemination of deposition transcripts. Conversely, though, other courts have granted such motions. *See, e.g.*, *Schoolcraft*, 2013 WL 4534913, at *4; *Barket v. Clark*, 2013 WL 647507, at *4 (D. Nev. Feb. 21, 2013); *Stern v. Cosby*, 529 F. Supp. 2d 417, 421–23 (S.D.N.Y. Dec. 12, 2007). Thus, the existence of some friendly precedent does not much help Haidon.

Second, it makes no difference that the Movants' disciplinary histories may be available through other means. *See* Haidon's Opp'n, Doc. No. 91-3, at 5–6. In fact, that availability simply ensures that my protective order operates within the confines of the First Amendment. *See Rhinehart*, 467 U.S. at 37 (explaining that a protective order entered pursuant to Rule 26(c) "does not offend the First Amendment" when it "is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources").

Finally, Haidon argues that "there is a strong public interest in access to discovery documents in this case." Haidon's Opp'n, Doc. No. 91-3, at 6–7. I disagree. As described above, as a general matter, the public does not have a "strong public interest" in access to discovery materials. Although there are situations in which that general rule will give way,[12] this

---

[11] For instance, *Condit v. Dunne* was a case of significant public concern because the plaintiff was a United States congressperson. 225 F.R.D. 113, 119 (S.D.N.Y. 2004). And in *Loussier v. Univ. Music Grp.*, in my respectful view, the court misstated the Rule 26(c) legal standard. 214 F.R.D. 174, 176–77 (S.D.N.Y. 2003) ("Under the rules, there is a presumptive right of public access to discovery in all civil cases.").

[12] I do not attempt here to catalog those situations. However, as mentioned above, two such situations might arise when public interest in the case is strong, or when the discovery material at issue might be especially relevant to another litigation.

case does not present such a situation.  Here, although the Movants are municipal police officers, Haidon alleges that Defendant Danaher essentially helped his friend retaliate against Haidon, who was the mother of his child.  The allegations of this case are highly personal.  For those reasons, I **grant** the Movants' motion for a protective order.  Neither party shall disseminate or cause to be published any transcripts or recordings of the Movants' depositions.  The parties' use of those transcripts or recordings shall be limited to the litigation of this case.  My order applies to the parties and their agents (including their attorneys).

\*     \*     \*

Haidon also styles her opposition as a "cross-motion to strike."  *See* Mot. to Strike, Doc. No. 91.  Haidon asks me to issue "[a]n order striking Defendant's false assertion that the plaintiff, Lauren Haidon, is the 'impetus or source of' posts about this lawsuit on the website 'Family Court Circus.'"  *Id.* at 1.  In an affidavit submitted in support of her motion to strike, Haidon swears that, in fact, she was not the impetus for those posts and "take[s] great offense . . . that I am somehow associated with" that website.  Haidon Aff., Doc. No. 91-2, at ¶ 3.  Haidon fails to cite any source of law as the basis for her motion to strike.

I **deny without prejudice** Haidon's motion to strike.  So far as I can tell, Haidon makes her motion pursuant to Rule 12(f), which allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike "are disfavored."  *Cummings v. Bradley*, 2013 WL 1149985, at *1 (D. Conn. Mar. 19, 2013); *see also Santiago v. Merriman River Assocs., LLC*, 2018 WL 2465358, at *3 (D. Conn. June 1, 2018) ("Resolution of a motion to strike under this rule is within the discretion of the district court, and such motions are generally disfavored and should be infrequently granted.").  Importantly, "Rule 12(f) allows a court to strike pleadings only."

*Cummings*, 2013 WL 1149985, at *1 (quoting *Ricci v. DeStefano*, 2006 WL 2666081, at *1 (D. Conn. Sept. 15, 2006)).  The Movants' motion for a protective order is not a pleading.  Even if it were a pleading, I would exercise my discretion not to strike it.  Although the finger-pointing in the Movants' brief was possibly erroneous (I express no view on whether it was), I see no need to strike the reference.  However, if later in this litigation the Movants make any further argument or request for relief based on Haidon's alleged connection with the relevant website, I will allow Haidon to renew her request.

## IV. Conclusion

For the reasons described above, the Movants' motion for a protective order, doc. no. 85, is **granted**, and Haidon's motion to strike, doc. no. 91, is **denied without prejudice**.

So ordered.

Dated at Bridgeport, Connecticut, this 23d day of July 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge